UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
LAWRENCE M. MEADOWS,                       :
                                           :
                *Appellant*,              :
                                           :
    -*against*-                            :
                                           :   14 Civ. 8708 (PAC)
AMR CORPORATION, et al.                    :
                                           :
                *Appellees*.              :   **OPINION & ORDER**
                                           :
                                           :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-8-15

HONORABLE PAUL A. CROTTY, United States District Judge:

    *Pro se* Appellant Lawrence Meadows appeals an order of the United States Bankruptcy Court for the Southern District of New York dated September 5, 2014, granting Debtor-Appellee AMR Corporation's ("AMR") objections and disallowing as untimely three amended proofs of claim filed by Meadows. The Bankruptcy Court determined that the amended claims—filed eight, eighteen, and twenty months after the bar date—did not relate back to Meadows's sole timely proof of claim. The Bankruptcy Court's order is AFFIRMED.

## BACKGROUND

    Meadows was employed as a pilot for American Airlines ("American"), a subsidiary of AMR, beginning in the early 1990s. He received long-term disability benefits from American from 2004 through December 2007, when the benefits were terminated. In October 2011, Meadows's employment at American was terminated. Meadows's claims in AMR's bankruptcy proceeding relate to several proceedings and lawsuits that Meadows commenced in connection

with the termination of his long-term disability benefits and his employment at American.

In July 2010, Meadows brought a lawsuit against American in the United States District Court for the Southern District of Florida seeking recovery of long-term disability benefits (the "ERISA Action"). *See Meadows v. American Airlines, Inc.*, 10-cv-22175-CMA (S.D. Fla. July 1, 2010). In March 2011, the district court granted final summary judgment to American. *See Meadows v. American Airlines, Inc.*, 2011 WL 1102774 (S.D. Fla. Mar. 24, 2011). The Eleventh Circuit affirmed. *Meadows v. American Airlines, Inc.*, 520 F. Appx. 787 (11th Cir. 2013).

In September 2011, Meadows filed a complaint under the Sarbanes-Oxley Act with the Occupational Safety and Health Administration ("OSHA") alleging that American had retaliated against him for reporting corporate fraud by threatening to terminate his employment (the "SOX Action"). In December 2012, OSHA issued a determination that there was no reasonable cause to believe that American had violated the Sarbanes-Oxley Act and dismissed the complaint. Meadows appealed to the Office of Administrative Law Judges. That appeal was stayed pursuant to AMR's bankruptcy proceeding and is still pending.

In February 2012, Meadows initiated a grievance pursuant to the collective bargaining agreement between American and its pilots, designated Grievance 12-011, alleging that he was not properly notified of changes in his employment status or his termination. In his grievance filing, Meadows referenced the Americans with Disabilities Act and the SOX Action.

On November 29, 2011, AMR and its related debtor entities filed for chapter 11 bankruptcy. *See In re AMR Corporation*, 11-15463-shl (S.D.N.Y. Bankr. 2011) ("Bankr. Dkt."). On May 4, 2012, the Bankruptcy Court entered an order setting July 16, 2012 as the deadline to file proofs of claims (the "Bar Date"). Bankr. Dkt. 2609. On March 20, 2012, Meadows filed Proof of Claim No. 1916 in the amount of $470,340, which consisted of a $338,900 priority

2

claim and a $131,440 unsecured claim. The claim stated that it was for "pilot long-term disability payments". No supporting documentation was included.

On July 13, 2012, the Allied Pilots Association ("APA") timely filed Proof of Claim No. 8331 in the amount of $5.361 billion. The APA asserted that claim on behalf of itself and all affected individual member pilots (including Meadows) on account of alleged violations of the collective bargaining agreement. The APA claim included Meadows's Grievance 12-011. On December 19, 2012, the Bankruptcy Court issued an order approving a settlement between the APA and American that, among other things, extinguished nearly all pending grievances that the APA had on behalf of its pilots, including Grievance 12-011. Bankr. Dkt. 5800.

Meadows subsequently submitted three amendments to his original claim after the Bar Date. On March 11, 2013, eight months after the Bar Date, Meadows filed Amended Claim No. 13478, seeking "at least $5,000,000" attributed to "Pilot long term disability, EEOC charges including wrongful termination and discrimination, SOX claim, etc". Meadows again asserted a $338,900 priority claim, with the balance as an unsecured claim. Meadows attached a list of pending proceedings and lawsuits from which he sought potential future recovery, including various EEOC charges, the SOX Action, and Grievance 12-011. On January 24, 2014, eighteen months after the Bar Date, Meadows filed Amended Claim No. 13788. That claim also sought at least $5 million, including a $338,900 priority claim, on essentially the same bases as the first amended claim. On March 5, 2014, twenty months after the Bar Date, Meadows filed Amended Claim No. 13865. That claim was also for $5 million, but entirely unsecured. The asserted bases were essentially the same as the prior two amended claims.

On October 21, 2013, the Bankruptcy Court issued an order confirming the debtors' Fourth Amended Joint Chapter 11 plan, which discharged all prepetition claims against the

3

debtors except for those preserved by a properly filed proof of claim. Bankr. Dkt. 10367. On March 17, 2014, AMR filed objections to the three amended claims, arguing that Meadows's original claim (the ERISA Action in the Southern District of Florida) was fully litigated and resolved and that the amended claims were not timely and did not satisfy the relation-back requirements. Bankr. Dkt. 11840. The Bankruptcy Court heard objections on April 17, 2014, at which Meadows was represented by counsel. *See* Bankr. Dkt. 12012. On August 27, 2014, the Bankruptcy Court issued its ruling, granting AMR's objections and disallowing the three amended claims. Bankr. Dkt. 12266. On September 5, 2014, the court memorialized those rulings in its final order. Bankr. Dkt. 12258. On October 9, 2014, the Bankruptcy Court modified its ruling. Bankr. Dkt. 12288. The court determined that Meadows's original claim had been fully resolved in the Southern District of Florida ERISA Action and afterward by the Eleventh Circuit. *Id.* at 27. The amended claims did not relate back to the original claim because they asserted statutory claims well beyond the original claim for long-term disability benefits and asserted an amount over ten times the original claim. *Id.* The court also held that the amended claims should not be permitted based on excusable neglect. *Id.* at 32-33.

Meadows appealed in October 2014. He argues that the Bankruptcy Court erred in holding that the amended claims did not relate back to his original claim. Meadows also claims that the Bankruptcy Court improperly accepted statements made by counsel for the APA at the claim objection hearing, denied Meadows the opportunity to adequately rebut those statements, and improperly modified its final order in a manner that deprived Meadows of substantial rights. AMR responds that the Bankruptcy Court properly determined that the amended claims did not relate back to the original claim nor did it abuse its discretion in disallowing the amended claims.

## DISCUSSION

### I.   Applicable Law

#### A.   Appellate Standard of Review

United States District Courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of Bankruptcy Courts. 28 U.S.C. § 158(a)(1). "On appeal, the court may 'affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *In re DPH Holdings Corp.*, 468 B.R. 603, 611 (S.D.N.Y. 2012) (quoting Fed. R. Bankr. P. 8013). Findings of fact are reviewed for clear error and legal conclusions are reviewed *de novo*. *Id.*

"[T]he decision to grant or deny an amendment to a timely filed proof of claim rests within the sound discretion of the bankruptcy judge." *In re Integrated Resources, Inc.*, 157 B.R. 66, 69 (S.D.N.Y. 1993). Such decisions are reviewed for abuse of discretion, which occurs only when a court "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *In re Harris*, 464 F.3d 263, 268 (2d Cir. 2006).

#### B.   Relation-Back Standard

Courts employ a two-step inquiry to determine whether to permit late amendments to a timely filed proof of claim. First, the court determines if the amendment "relates back" to the original claim, which is met where the amendment "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005). If it does relate back, the court then "examine[s] each fact within the case and determine[s] whether it would be equitable to allow the amendment." *Id.* To make this

determination, the court considers whether the late claimant acted in good faith and can justify the delay, whether the opposing party would be unduly prejudiced by the amendment, and whether the creditors would receive a windfall from a disallowance. *Id.*

### C. Excusable Neglect Standard

The court may also permit a late-filed claim if the delay was due to the claimant's "excusable neglect". *Id.* at 121 (quoting Fed. R. Bankr. P. 9006(b)(1)). The process to find excusable neglect is equitable in nature, taking into account "all of the relevant circumstances surrounding the party's omission", including "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Courts in the Second Circuit have "taken a hard line" in applying the *Pioneer* factors. *Id.* (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)). Courts focus in particular on the third *Pioneer* factor because "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* (internal quotation marks omitted).

## II. Analysis

### A. Relation-Back of Amended Claims

The Bankruptcy Court applied the two-step inquiry to determine whether to permit the late filed amended claims. The court held that the amended claims did not relate back to the original claim for several reasons: (i) the original claim was based on a denial of long-term

disability benefits in 2007, whereas the amended claims included claims such as the ERISA Action and SOX Action that arose years later; (ii) the amended claims sought more than ten times the amount asserted in the original claims; and (iii) the original claim did not include any supporting documentation that would put AMR on notice that claims beyond the one for long-term disability benefits were being asserted. Bankr. Dkt. 12288, at 27. The court rejected Meadows's argument that the amended claims, which referenced Grievance 12-011, were preserved by the subsequently-settled APA claim. *Id.* at 29. The court reasoned that because the grievance process serves only to resolve narrow disputes under the collective bargaining agreement, "it follows that Grievance 12-011 cannot somehow preserve Mr. Meadows's right to pursue the far more wide-ranging statutory claims set forth in the Amended Claims."[1] *Id.* at 30. Having determined that the amended claims do not relate back, the court did not reach the second step of the inquiry.

Meadows maintains his amended claims relate back. First, Meadows asserts that the statutory claims cited in his amended claims relate back to his original claim because these statutory claims themselves reference his claim for long-term disability benefits, which in turn was referenced in the original claim. Appellant's Opening Br. at 38. Second, Meadows argues that his amended statutory claims relate back to his original claim because they are a "natural off shoot" of the original claim. *Id.* at 32. Third, Meadows argues that the amended statutory claims

---

[1] The Bankruptcy Court noted that "[t]he debtors do not challenge the ability of Mr. Meadows to continue pursuing his potential remedies under Grievance 12-011, and the debtors include a provision to that effect in their proposed order on this objection." *Id.* at 29. The court added that "Mr. Meadows will end up with whatever rights in the grievance process he should have by virtue of Grievance 12-011, which is all that was preserved by virtue of the APA settlement and reservation of rights." *Id.* at 31.

7

are preserved because they were included in Grievance 12-011, which was part of the timely filed APA claim. *Id.* at 25-30.

Those arguments are rejected. Instead, the Court determines that the Bankruptcy Court did not abuse its discretion in determining that the amended claims do not relate back. As to Meadows's first argument, it is irrelevant that the statutory claims in the amended claims reference his claim for long-term disability benefits; what matters is whether the original claim referenced or put debtors on notice of the late-filed statutory claims. Meadows's original claim—which listed only "pilot long-term disability payments"—does not. As to Meadows's second argument, we agree with the Bankruptcy Court that the amended claims are not a "natural off shoot" of the original claim because they claim over ten times the original amount and are premised on factual allegations arising years after those in the original claim. Finally, we agree with the Bankruptcy Court that the timely filing of a claim for Grievance 12-011 by the APA does not preserve Meadows's late-filed statutory claims. As the Bankruptcy Court properly observed, the grievance process is intended to address "minor disputes" and not the "wide-ranging statutory claims set forth in the Amended Claims." *See* Bankr. Dkt. 12288, at 30. In any event, the APA settled Grievance 12-011 as part of its larger settlement with AMR, and it would prejudice the debtors to permit late-filed amendments premised on already settled claims.

**B.   Excusable Neglect**

The Bankruptcy Court also held that excusable neglect was not a valid basis to permit the amended claims. The court applied the *Pioneer* factors, and appropriately weighed the fact that Meadows had waited eight, eighteen, and twenty months after the Bar Date to file his three amended claims. *Id.* at 32-33. The court also reasoned that permitting the amended claims

8

would create "a danger in opening the floodgates to potential claimants at such a late juncture" and would partially undo the settlement between the APA and debtors. *Id.* at 33-34.

Meadows argues that his delays in filing the amended claims are reasonable and so his neglect in failing to comply with the Bar Date is excusable. He states that, on advice from his counsel at the time, he believed that his statutory claims were preserved by the inclusion of Grievance 12-011 in the APA claim, and that he began filing the amended claims soon after learning otherwise. Appellant's Opening Br. at 35.

The Bankruptcy Court did not abuse its discretion in holding that the amended claims cannot be permitted due to excusable neglect. Given the "hard line" the Second Circuit has taken in applying the *Pioneer* factors, the Bankruptcy Court had discretion to determine that Meadows's failure to comply with the clear Bar Date Order is adequate to render the delay inexcusable. *See In re Enron Corp.*, 419 F.3d at 133. As the Bankruptcy Court correctly reasoned, while incorrect legal advice is regrettable (if that is what happened here), "the case law is clear that an attorney's mistake does not ordinarily or even necessarily constitute excusable neglect." Bankr. Dkt. 12288 (citing *Pioneer*, 507 U.S. at 396-97). Further, we agree that allowing late-filed amendments years after the confirmation of the debtors' reorganization plan would create a serious risk of opening the floodgates to other potential late claims. *See In re Enron Corp.*, 419 F.3d at 132.

## C. Meadows's Other Arguments

Meadows raises two more arguments. First, Meadows asserts that the Bankruptcy Court abused its discretion and violated Fed. R. Evid. 103 when, at the April 17, 2014 claim objection hearing, the court barred Meadows from introducing additional testimony and supporting exhibits related to Grievance 12-011 and Meadows's statutory claims, failed to give Meadows

9

prior notice of oral argument by APA counsel, and "prejudicially gave full deference to APA, but was dismissive of [Meadows's] objections and offers of proof." Appellant's Opening Br. at 16-25. We disagree. In ruling on Meadows's late-filed amendments, the Bankruptcy Court allowed Meadows, who at the time was represented by counsel, the opportunity to submit full briefing and provide oral argument at the objection hearing. *See* Bankr. Dkt. 12012, at 25-80. The court issued a thorough, well-reasoned opinion that carefully analyzed Meadows's arguments and the lengthy record. The Bankruptcy Court has broad discretion to exclude evidence that would be cumulative, confuse the issue, or cause undue delay. *See* Fed. R. Bankr. P. § 9017:6; Fed. R. Evid. 403. The Bankruptcy Court was well within its discretion in ruling on the objections to Meadows's claims.

Second, Meadows argues that the Bankruptcy Court improperly modified the language of its final order pertaining to Meadows's ability to pursue Grievance 12-011, and in so doing deprived Meadows of substantial rights. *See* Appellant's Opening Brief, at 39-46. The pertinent part of the court's final order of September 5, 2014 reads:

> ORDERED that Proof of Claim Nos. 13478, 13788, and 13865 are disallowed and expunged in their entirety; and it is further
>
> ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent ~~that such arbitration is limited in scope to claims involving the interpretation of the CBA and provides remedies, if any and if appropriate, that are customary under the grievance procedures created by the RLA~~ *permitted by applicable law*"

Bankr. Dkt. 12258 (strikethrough and emphasis in original).

Meadows is correct that the Bankruptcy Court modified the proposed final order, but that does not mean that Meadows was prejudiced. If anything the modification broadens the scope of how Meadows can arbitrate Grievance 12-011 by removing a possible limiting condition and

10

replacing it with all legal avenues. As such, the Bankruptcy Court did not abuse its discretion in issuing the modified final order.

## CONCLUSION

The Bankruptcy Court's order dated September 5, 2014 (Bankr. Dkt. 12258) is AFFIRMED. The Clerk of Court is directed to enter judgment and terminate 14 cv 8708 (PAC).

Dated: New York, New York
October 8, 2015

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge

Copy Mailed By Chambers To:
Lawrence M. Meadows
P.O. Box 4344
Park City, UT 84060